**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| ANDY BORRERO PADILLA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.:2:12-CV-202-JEM |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Andy Borrero

Padilla on May 21, 2012, and Plaintiff's Memorandum in Support of His Motion for Summary

Judgement [DE 17], filed by Plaintiff on October 3, 2012. Plaintiff requests that the February 9,

2011, decision denying his application for Disability Insurance Benefits be remanded. For the

reasons set forth below, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On September 30, 2009, Plaintiff filed an application for Disability Insurance Benefits

("DIB"), alleging disability as of September 10, 2009, due to diabetes, high blood pressure, high

cholesterol, neuropathy, and back problems. After his claim was denied on February 3, 2010, and

again on reconsideration on April 5, 2010, Plaintiff requested a hearing. On January 28, 2011, a

hearing was held in front of Administrative Law Judge ("ALJ") Edward Studzinski at which

Plaintiff testified through an interpreter. A vocational expert ("VE") also testified. On February 9,

2011, the ALJ issued a decision finding Plaintiff not disabled and denying benefits. On March 21,

2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final

decision of the Commissioner. *See* 20 C.F.R. § 404.981. On May 21, 2012, Plaintiff filed suit in

this Court for review of the Commissioner's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

### A.    Background

Plaintiff was 38 years old at the time of his alleged onset date.  He is a native Spanish speaker and is unable to communicate in English.  He has a limited education and has past relevant work as a meat blender and a janitor.

### B.    Medical Evidence

In April 2008, Plaintiff saw Dr. Ralph W. Richter regarding complaints of fingers in both hands locking, a condition he claimed to have had for several years.  Plaintiff was diagnosed with trigger finger and, after conservative treatment failed, underwent surgery on November 13, 2009. Dr. Richter indicated that Plaintiff would be able to return to work approximately four weeks after surgery.

In March and April 2008, Plaintiff saw Dr. Jaime Ruiz-Montero, complaining of swelling in his legs.  Dr. Ruiz-Montero prescribed Lasix and advised Plaintiff to decrease his salt intake and take his medications every day. On August 17, 2009, Plaintiff again saw Jaime Ruiz-Montero, complaining of swelling to his legs, which he reported was worse after work.   Dr. Ruiz-Montero noted that Plaintiff was non-compliant with diet and medication.  Dr. Ruiz-Montero diagnosed leg edema, morbid obesity, hypertension, and uncontrolled diabetes and advised Plaintiff to take his medications on a daily basis, to lose weight, and to increase his physical activity.

On September 11, 2009, Plaintiff saw Dr. Ruiz-Montero again, complaining of weakness in the left side of his face. Dr. Ruiz-Montero prescribed medications and advised Plaintiff to undergo a physical therapy evaluation. On September 15, 2009, Plaintiff saw Dr. Pradeep V. Kalokhe, who diagnosed Bell's Palsy, secondary to diabetes, and neuropathy, secondary to diabetes. On September 23, 2009, Plaintiff underwent a physical therapy evaluation. The attending physical therapist administered various treatments to Plaintiff, diagnosed Plaintiff with facial weakness on account of Bell's Palsy, and found Plaintiff to have a good prognosis. Plaintiff was instructed to undergo physical therapy three times per week for four weeks.

On October 20, 2009, Plaintiff saw Dr. Ruiz-Montero, complaining of pain in his lower back that radiated to his legs and of weakness in his legs. Dr. Ruiz-Montero ordered X-rays. On October 22, 2009, Plaintiff underwent a lumbar spine X-ray. It showed degenerative changes in Plaintiff's lumbar spine, but an MRI was suggested for further evaluation. On November 10, 2009, Plaintiff underwent a lumbar MRI. The results showed clumping of the nerve roots within the thecal sac which "may be secondary to arachnoiditis"; narrowing of the L5-S1 intervertebral disc space; a broad based posteriorly bulging disc with a superimposed left paracentral disc herniation; disc material extending somewhat caudally and abutting the left S1 nerve root; neuroforamina which are narrowed bilaterally at the L5-S1 level; and facet joint hypertrophy, most pronounced at the L5-S1 level. A post gadolinium MRI of the lumbar spine was suggested for further evaluation, but no record of further MRI testing exists in the record.

Dr. Ruiz-Montero referred Plaintiff to orthopedic surgeon Dr. Joseph P. Spott for his back problems, and on November 11, 2009, Plaintiff saw Dr. Spott. Plaintiff complained of radicular back pain into his bilateral legs, for which he reported no known cause but indicated that he had

these symptoms for the past eight months. Dr. Spott diagnosed lumbar degenerative disc disease at L5/S1. He recommended nonoperative management first to be followed by surgical management if necessary.

For the nonoperative management options, Dr. Spott referred Plaintiff to Dr. Rajive K. Adlaka. On November 24, 2009, Dr. Adlaka wrote that he thought Plaintiff was a good candidate for tranforaminal epidural injection and noted that Plaintiff "was agreeable to proceed." AR 368. Dr. Adlaka also noted that he had discussed medication management options with Plaintiff but that "[a]t this point in time [Plaintiff] is not interested in anything." AR 368. In a January 25, 2010, note, Dr. Adlaka indicated that Plaintiff had been unable to pursue the recommended epidural injections because of elevated blood sugar levels but that Plaintiff continued to be "agreeable to proceed" once his blood sugar was under control. AR 366.

On February 1, 2010, state agency reviewing psychologist, Donna Unversaw, Ph.D., prepared a Mental Residual Functional Capacity Assessment, checking boxes indicating some moderate limitations in areas of concentration, persistence, and pace. She opined that Plaintiff "show[ed] adequate ability to learn, remember, and follow instructions consistent with his physical abilities and when instructed in his language," that despite "some interruption in [attention/concentration] and overall pace due to mood/pain factors, [Plaintiff] retains sufficient abilities to attend/complete tasks consistent with the above," and that "[h]e may have some interruption in stress tolerance, though this would not preclude him from performing routine tasks." AR 379.

On February 16, 2010, Plaintiff returned to Dr. Kalokhe for reasons not specified in Dr. Kalokhe's notes. Dr. Kalokhe recommended Plaintiff undergo EMG studies of both upper

extremities and an MRI of his cervical spine. On February 24, 2010, Plaintiff underwent EMG studies of his upper and lower extremities. The results showed normal upper extremities, but the lower extremities study was consistent with sensorimotor polyneuropathy without evidence of denervation. On March 31, 2010, Plaintiff returned to see Dr. Kalokhe. Dr. Kalokhe note again provides few details of the visit, but it includes diagnoses of diabetes, peripheral neuropathy, and "lumbar spondylitis disc disease?," and also mentioned arachnoiditis. Dr. Kalokhe referred Plaintiff for a neurosurgery/spine surgery evaluation and noted that "[b]ecause of the above problems he could be considered disabled from physical jobs." On May 4, 2010, Plaintiff saw Dr. Kalokhe for a follow up. Dr. Kalokhe note again provides few details but lists as diagnoses severe peripheral neuropathy secondary to diabetes, lumbar spondylitis, arachnoiditis, and stenosis. Dr. Kalokhe also noted that "[t]his patient should be considered disabled for any job due to his multiple problems listed above." AR 405.

## C. Plaintiff's Testimony

Plaintiff testified at the hearing with the aid of an interpreter. He testified that he suffers from back pain that lasts all day, increasing with activity and decreasing when he is seated. He also stated that he wakes to fingers on both hands being "stuck" every morning, a condition that can last for some time. Plaintiff stated he uses a cane on a daily basis, both while standing and walking, because at times he experiences an electrical sensation in his legs that causes his knees to give out. He also stated that he purchased a recliner to keep his legs elevated because they swell up on a daily basis. He said he would not be able to walk more than a half-block due to his back pain. Plaintiff also testified that he had sought treatment from a psychiatrist but had stopped seeing her due to her inability to speak Spanish and his inability to communicate in English.

## D.   ALJ's decision

On February 9, 2011, the ALJ issued a decision finding Plaintiff not disabled.  He found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine (DDD); insulin dependent diabetes mellitus (IDDM); major depressive disorder with psychosis (MDD); and obesity.  He further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  He determined that Plaintiff had a  residual functional capacity ("RFC") to perform light work "except that claimant can never climb ladders, ropes, or scaffolds; the claimant is limited to work comprised of simple, routine, repetitive tasks; and, the claimant is limited to only occasional interaction with the general public."  AR 21.  He further limited Plaintiff's RFC to require an "option to alternate between sitting and standing once an hour." AR 21.  In determining Plaintiff's RFC, the ALJ found Plaintiff's statements regarding "the intensity, persistence and limiting effects of [his] symptoms . . . not credible to the extent they are inconsistent with the above residual functional capacity" and assigned "little weight" to Dr. Kalokhe's opinion that Plaintiff should be considered disabled.  AR 21, 25.

Based on Plaintiff's RFC and the testimony of the VE, the ALJ determined he was unable to perform any past relevant work.  However, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform given his age, education, work experience, and residual functional capacity.  Accordingly, the ALJ found Plaintiff not disabled  from September 10, 2009, through the date of the decision.

# STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence.  *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995).  An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review."  *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations.  The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks reversal or remand of the ALJ's decision based on the following arguments: (1) the ALJ improperly evaluated Plaintiff's credibility; (2) the ALJ improperly determined the weight given a treating source opinion; (3) the ALJ improperly analyzed Plaintiff's symptoms in determining he did not meet a listing or, alternatively, failed to take into account the cumulative effects of Plaintiff's impairments in determining that Plaintiff did not equal a listing; and (4) the ALJ improperly assessed Plaintiff's RFC.

### A.     Credibility Determination

Plaintiff argues that the ALJ improperly discredited his testimony regarding the severity of the symptoms related to his back problems.   In determining an RFC, the ALJ is to take into consideration any of the claimant's subjective symptoms that can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529(a).  The ALJ is to consider the intensity, persistence, and limiting effects of those symptoms to determine how they affect the claimant's functioning.  20 C.F.R. § 404.1529(c).  If objective medical evidence alone does not substantiate a claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record. 20 C.F.R. § 404.1529(c).  An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong" or "based on errors of fact or logic."  *Prochaska*, 454 F.3d at 738; *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006).

Plaintiff argues that the ALJ's credibility determination is improper because it is based on his misinterpreting or mischaracterizing the evidence in the record and because the ALJ considered Plaintiff's noncompliance with treatment as a factor in finding him not credible without also considering his reasons for noncompliance. The ALJ wrote that he found Plaintiff's allegations of "severe pain, an inability to effectively ambulate without the aid of a cane, and the requirement that he elevate his feet . . . not accepted as alleged because those allegations are not consistent with the objective medical evidence." AR 22. As evidence of inconsistencies, the ALJ cited the only mild to moderate abnormalities shown in an October 2009 MRI. The ALJ also wrote that the record showed Plaintiff "was not interested in any treatment" in November of 2009, which the ALJ did not consider to be "indicative of disabling pain." AR 22. The ALJ also wrote that Plaintiff's testimony at the hearing that his cane was prescribed contradicted records in which both Plaintiff and his daughter said the cane was not prescribed, an inconsistency that the ALJ found further detracted from Plaintiff's credibility. AR 23. Finally, the ALJ also stated that Plaintiff's failure to attend prescribed physical therapy sessions in 2010 undermined his credibility. AR 23.

1.    *Mischaracterization of Evidence*

While an ALJ's credibility finding is generally entitled to substantial deference and will not be overturned unless the Plaintiff can show it was "patently wrong," a court may remand "if the finding is based on errors of fact or logic." *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (citing *Hanaj v. Gonzales*, 446 F.3d 694, 700 (7th Cir. 2006); *Georgis v. Ashcroft*, 328 F.3d 962, 970 (7th Cir. 2003); *Cao He Lin v. U.S. Dept. of Justice*, 428 F.3d 391, 403 (2d Cir. 2005)). Plaintiff argues that remand is warranted because the ALJ based his credibility finding on errors or mischaracterizations of fact.

First, Plaintiff points out that the ALJ was mistaken when he stated that the October 2009 test he cited as inconsistent Plaintiff's alleged level of pain was an MRI. It was actually an X-ray. The ALJ wrote that he found it "difficult to reconcile" the "dramatic changes" between the "minimal findings" of the October "MRI" with more serious abnormalities shown in an actual MRI done just one month later, and he impliedly discounted the findings of the MRI accordingly. Plaintiff asserts that the "differences" noted by the ALJ are attributable to the difference in the technologies and that the two tests are in no way inconsistent. Plaintiff argues that the ALJ's "ignoring" the second MRI's findings—which Plaintiff asserts fully support his allegations of pain—in assessing Plaintiff's credibility warrants remand because his justification for ignoring it was based on a mistake of fact.

Next, Plaintiff argues that the ALJ's discrediting his testimony because of his disinterest in treatment was flawed because it is also based on a mistaken reading of the record. The ALJ found Plaintiff's testimony regarding the severity of his back pain not credible in part, he said, because Plaintiff "indicated he was not interested in any treatment," which the ALJ believed to be not "indicative of disabling pain." AR 22-23. The November 24, 2009, treatment report upon which the ALJ based this conclusion indicated that Plaintiff was not interested in any of the "medical management options" discussed with him. AR 368. However, one line earlier the doctor noted that Plaintiff was "agreeable to proceed" with other treatment options, namely epidural injections. AR 368. Plaintiff argues that the ALJ's misinterpreting this treatment report to say Plaintiff was not interested in *any* treatment further weakens his reasoning, further weighing toward remand.

Finally, Plaintiff argues that the ALJ mischaracterized Plaintiff's testimony regarding his cane. The ALJ wrote that Plaintiff testified that his cane was prescribed. Because Plaintiff and his daughter had written in Function Reports that the cane was not prescribed, the ALJ found that

apparent contradiction further detracted from Plaintiff's credibility. As Plaintiff asserts, the transcript shows the ALJ was mistaken, that Plaintiff did not testify that the cane was prescribed, only that his doctors told him he could use a cane. At the hearing the ALJ asked, "Mr. Padilla, did a doctor prescribe your cane?" AR 48. Plaintiff, through an interpreter, responded:

> Yes, I did [INAUDIBLE] to Dr. Kyoski. He's my—the doctor for my leg and also Montero for my back. They told me that if I needed to use a cane to go ahead and use it because the condition was enough for me to use a cane.

AR 48.

Individual mistakes of fact alone are not necessarily enough to warrant remand where the credibility finding is otherwise well-supported. *See Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) ("In analyzing an ALJ's opinion for such fatal gaps or contradictions, 'we give the opinion a commonsensical reading rather than nitpicking at it.'") (quoting *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999)). However, in this case, most of the reasons cited by the ALJ for discrediting Plaintiff's allegations of pain were based at least in part on errors of fact, making his credibility finding suspect enough to warrant remand. *See Diaz v. Colvin,* 2:12-CV-46-PRC, 2013 WL 5460151, at *8 (N.D. Ind. Sept. 30, 2013) (concluding that "remand is warranted because most of the specific reasons given by the ALJ for the credibility determination are unsupported by the evidence or are logically flawed.").

2.     *Plaintiff's Non-Compliance with Treatment*

Remand is further warranted because the ALJ found Plaintiff's lack of treatment detracted from his credibility without properly considering his reasons for declining treatment. An ALJ may find a claimant's statements regarding the severity of his symptoms less credible if the record indicates a level of treatment inconsistent with those allegations. *Shauger v. Astrue*, 675 F.3d 690,

696 (7th Cir. 2012) (citing SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Craft*, 539 F.3d at 679. However, an ALJ may not make negative inferences about a claimant's credibility on this basis without first considering any reasons the claimant may have had for avoiding treatment. *Id.* If no reasons for the lack of treatment are clear from the record, the ALJ "may need to recontact the individual or question the individual at the administrative proceeding" to develop the record enough to determine if good reasons exist. SSR 96-7p, 1996 WL 374186, at *7.

The ALJ found Plaintiff's failure to receive epidural injections, his declining medication management, and his missing physical therapy sessions detracted from Plaintiff's credibility regarding his back-related symptoms. However, the ALJ never considered Plaintiff's reasons for noncompliance. The ALJ neither cited reasons from the record nor asked Plaintiff at the hearing to provide reasons for not receiving treatment for his back problems. Accordingly, the ALJ's credibility determination is erroneous.

For the foregoing reasons, this matter is remanded. On remand, the ALJ is instructed to make a new credibility finding, correcting any factual misunderstandings and considering any reasons Plaintiff may have had for his lack of treatment, developing the record further as necessary.

## B.     Weight of Treating Source Opinion

Plaintiff also argues that the ALJ provided insufficient reasons for refusing to give the opinions of Dr. Kalohke, a treating physician, controlling weight. The ALJ gave Dr. Kalokhe's opinions "little weight" because he found "insufficient objective medical findings to support such severe limitations" and because they "contemplate additional upper body and upper extremity limitations that are not supported by the longitudinal record." AR 25.

Plaintiff correctly notes that a treating physician's opinion regarding the nature and severity of a claimant's impairment must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). Plaintiff neglects to note, however, that an opinion that someone is disabled is not entitled to "any special significance," even if from a treating physician, because a determination that someone meets the statutory definition of disability is one reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1), (d)(3). Accordingly, Dr. Kalokhe's opinions that Plaintiff should be considered disabled from any job due to his multiple medical problems are not entitled to controlling weight as Plaintiff argues.

However, an ALJ cannot simply ignore a treating physician's opinion on an issue reserved to the Commissioner, but must "carefully consider" it. SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996); *see also Bjornson v. Astrue*, 671 F.3d 640, 647-48 (7th Cir. 2012). Because the lack of support for an opinion and lack of consistency of the opinion with the record as a whole, the reasons cited by the ALJ, are sufficient reasons to discount a physician's opinions, the Court finds that the ALJ's conclusion is supported by substantial evidence. *See* 20 C.F.R. § 404.1527(c)(3), (c)(4) (listing "Supportability" and "Consistency" as factors to be considered in evaluating opinion evidence).

## C.    Listings Evaluations

Plaintiff further seeks remand based on the ALJ's Listing determination. He argues the ALJ failed to adequately articulate his reasons for finding Plaintiff did not meet Listing 1.04 or, alternatively, improperly neglected the effects of Plaintiff's obesity in determining that he did not equal a Listing.

An individual suffering from an impairment that meets or equals the criteria of a Listing is conclusively presumed disabled. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). The claimant "has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.") (emphasis in original); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. Ind. 2012) (claimant "had the burden of establishing that he met all of the requirements of a listed impairment").

The ALJ concluded that Plaintiff did not meet or equal Listing 1.04 for Disorders of the Spine. He wrote, "Listing 1.04 was considered with regard to the claimant's degenerative disc disease of the lumbar spine; however, the record fails to demonstrate an inability on behalf of the claimant to ambulate effectively as defined within Listing 1.00(B)(2)(b)." AR 18. He also concluded that Plaintiff did not equal Listing 1.04 "even after taking into account the exacerbatory impact of [his] obesity." AR 18.

*1. Meeting Listing 1.04*

First, Plaintiff argues that the ALJ failed to adequately articulate his reasoning for finding he did not meet Listing 1.04, thereby preventing the Court from determining whether the ALJ adequately considered evidence of Plaintiff's alleged arachnoiditis.

Listing 1.04 provides, in relevant part:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> . . . B. Spinal arachnoiditis, confirmed by an operative note or

pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C.     Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04. The ALJ found Plaintiff did not meet this listing because he did not demonstrate an inability to ambulate effectively, indicating that he evaluated only the criteria of subsection C above.

Plaintiff argues the ALJ's failure to explain why he found the subsection B criteria not met prevents the Court from determining whether the ALJ properly considered them. Specifically, Plaintiff argues that subsection B's requirement of "appropriate medically acceptable imaging" which confirms the existence of spinal arachnoiditis was met by an MRI from 2009 which "points to a diagnosis of arachnoiditis." Br. 8. However, the MRI to which Plaintiff refers only indicates the existence of "clumping of the nerve roots " which "*may be* secondary to arachnoiditis" and suggests a further testing. AR 369. (emphasis added). Arachnoiditis is also listed without explanation as a diagnosis in two notes from Dr. Kalokhe, but the notes point to no tests which confirm the diagnosis. Because Plaintiff points to no "operative note or pathology report of tissue biopsy, or . . . appropriate medically acceptable imaging" in the record that confirm the diagnosis, Plaintiff has not met his burden of proving that this requirement of Listing 1.04(B) has been met. Accordingly, although an element-by-element analysis of each of Listing 1.04 subsections would have eliminated any uncertainty that the ALJ considered each thoroughly, the Court finds that any

17

failure to do so is harmless because Plaintiff has not demonstrated, as is his burden, that he meets requirements of Listing 1.04(B). *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("[The court] will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result."); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time.").

2.      *Listing Equivalence*

Next, Plaintiff argues that the ALJ failed to adequately articulate his reasons for discounting the "exacerbatory impact" of Plaintiff's obesity in finding Plaintiff did not equal a Listing. A claimant who "has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing" may nonetheless equal a Listing if his "combination of impairments is equivalent in severity to a listed impairment." SSR 02-1p, 2000 WL 628049, *5 (Sept. 12, 2002); *See also Barnett*, 381 F.3d at 668. ("A claimant may also demonstrate presumptive disability by showing that her impairment is accompanied by symptoms that are equal in severity to those described in a specific listing.") (citing 20 C.F.R. § 404.1526(a)).

The ALJ found Plaintiff's obesity to be a severe impairment at Step Two of the sequential evaluation process. At Step Three, however, the ALJ wrote without discussion that "even after taking into account the exacerbatory impact of [Plaintiff's] obese state," his back impairment did not equal Listing 1.04 because the record did not demonstrate an "inability to ambulate effectively." AR 18. The regulations provide: "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of

daily living." 20 C.F.R. § 404, Subpart. P. App. 1 § 1.00(B)(2)(b)(2). Plaintiff asserts that record shows that his obesity may, in fact, affect his ability to "ambulate effectively" enough that the Listing is equaled. As evidence, Plaintiff cites his own testimony that "he is unable to walk more than half a block, uses a cane when standing or walking due to his knees giving out and his loss of balance, and every day he has to deal with his legs swelling, forcing him to elevate his legs," apparently arguing these difficulties are obesity-related. Pl. Br. 10 [DE 17] (citations omitted). Plaintiff argues the ALJ's failure to discuss these symptoms warrants remand because the ALJ failed to make an "accurate and logical bridge" between the evidence related to obesity-related symptoms and his conclusory statement that their combination with Plaintiff's back impairments did not equal a Listing.

Although the ALJ did not specifically address Plaintiff's alleged difficulties walking at Step Three, he did address them and find them not credible in determining Plaintiff's RFC. Accordingly, the Court is able to trace the path of the ALJ's reasoning in finding that Plaintiff's difficulties walking did not contribute to his equaling Listing 1.04. However, because the Court has already found the ALJ's credibility findings flawed, the equivalence finding may also be affected. Accordingly, on remand, the ALJ is instructed to re-assess the effects of Plaintiff's alleged difficulties walking in his Listing equivalence analysis if necessary.

**D.     RFC Analysis**

Finally, Plaintiff argues the ALJ performed an improper RFC analysis. Specifically, he argues the ALJ failed to fully account for his moderate limitations in concentration, persistence, and pace in his RFC and failed to incorporate into the RFC limitations caused by arachnoiditis, leg swelling, and trigger finger.

*1.      Concentration, Persistence, and Pace*

Based on Plaintiff's mental impairments, the ALJ limited Plaintiff's RFC to "simple, routine, repetitive tasks" with "only occasional interaction with the general public."  Plaintiff argues this RFC does not adequately account for the moderate limitations in concentration, persistence, and pace found by the ALJ at Step Three or by a state agency psychologist in her Mental Residual Functional Capacity Assessment.

When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must include in the hypothetical posed to the VE an RFC incorporating all of the claimant's limitations supported by medical evidence in the record.  *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) ("a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record"); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers.") (citation omitted).  If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform, resulting in an incorrect finding on the ultimate question of disability.  *Kasarsky*, 335 F.3d at 543.  The limitations to be incorporated include any in concentration, persistence, and pace, although there is not "a per se requirement that this specific terminology ('concentration, persistence, and pace') be used in the hypothetical in all cases."  *O'Connor-Spinner*, 627 F.3d at 619.

In this case, the ALJ found moderate limitations in concentration, persistence, and pace at Step Three.  At the RFC analysis stage, the ALJ gave "great weight" to the state agency psychological consultant's mental assessment, in which the psychologist checked boxes indicating

moderate limits in specific areas related to concentration, persistence, and pace.

Plaintiff argues the ALJ's limiting his RFC to "simple, routine, repetitive tasks" with "only occasional interaction with the general public" does not adequately account for these limitations in concentration, persistence, and pace. However, the Court need not address the question of whether the RFC itself adequately accounted for limitations in concentration, persistence, and pace. Even if the ALJ's RFC was ultimately inadequate, the hypothetical posed to the VE was more thorough:

> I'm giving this individual – I'm noting that this individual does have moderate deficiencies in terms of concentration, persistence and pace and social relations. But these moderate deficiencies are primarily with respect to dealing with the public and with doing – performing detailed and complicated tasks. So despite their – his moderate deficiencies, he can still perform simple routine and repetitive tasks and he is capable of performing work. He is limited to work that involves no more than occasional and superficial interaction with the public.

AR 53. Accordingly, even if the RFC was flawed, any flaw was harmless because the VE was adequately informed of the Plaintiff's limitations in concentration, persistence, and pace in the hypothetical posed to him. *See O'Connor-Spinner*, 627 F.3d at 619 (stating that specifically including limitations in "concentration, persistence, and pace" in the hypothetical to the VE is unnecessary when there are reasons to "assume[] a VE's familiarity with the claimant's limitations.")

### 2. *Arachnoiditis, Leg Swelling, Trigger Finger*

Plaintiff also argues that the ALJ failed to fully account for limitations caused by Plaintiff's alleged arachnoiditis, leg swelling, and trigger finger in the RFC without adequately articulating his reasons for not including them. In support of these arguments, Plaintiff primarily cites his own subjective allegations of the symptoms related to these impairments. Effectively, Plaintiff argues

that the ALJ discounted his subjective symptoms without first explaining why he found them not credible. The Court has already remanded with instructions to the ALJ to re-evaluate Plaintiff's credibility. Therefore, on remand the Court further suggests that the ALJ address symptoms related to Plaintiff's trigger finger, arachnoiditis, and leg swelling in the interest of thoroughness.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Memorandum in Support of His Motion for Summary Judgement [DE 17] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 7th day of March, 2014.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record